**KAZEROUNI LAW GROUP, APC**
Abbas Kazerounian, Esq. (SBN: 249203)
ak@kazlg.com
Mona Amini, Esq. (SBN: 296829)
mona@kazlg.com
245 Fischer Avenue, Unit D1
Costa Mesa, California 92626
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

*Attorneys for Plaintiff,*
Jason Singleton

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JASON SINGLETON, individually on behalf of all others similarly situated,<br><br>                Plaintiff,<br><br>  vs.<br><br>CITY OF HOPE,<br><br>                Defendant. | Case No.:<br><br>CLASS ACTION COMPLAINT FOR VIOLATIONS OF:<br><br>1)   THE CONFIDENTIALITY OF MEDICAL INFORMATION ACT, CAL. CIV. CODE §§ 56, *ET SEQ.* ("CMIA");<br>2)   THE CALIFORNIA UNFAIR COMPETITION LAW, CAL. BUS. & PROF, CODE §§ 17200, *ET SEQ.* ("UCL");<br>3)   NEGLIGENCE; AND<br>4)   BREACH OF IMPLIED CONTRACT<br><br>JURY TRIAL DEMANDED |

///

///

///

///

///

///

///

- 1 -

Plaintiff JASON SINGLETON (hereinafter referred to as "Plaintiff"), individually and on behalf of others similarly situated (the "Class Members"), by and through his attorneys, allege upon information and belief as follows:

## NATURE OF THE CASE

1.    Under the Confidentiality of Medical Information Act, California Civil Code §§ 56, *et seq.* (hereinafter referred to as the "Act"), Plaintiff, and all other persons similarly situated, as patients of Defendant CITY OF HOPE (hereinafter referred to as "Defendant") have the right to expect that the confidentiality of their medical information, including confidential protected health information ("PHI") and personally identifiable information ("PII"), in possession of and/or derived from Defendant to be reasonably preserved.

2.    Notwithstanding this right, Defendant failed to protect and preserve confidentiality of their individual identifiable medical information was contained in or was made accessible by Defendant's computer systems and accessed, viewed, and/or acquired by an unauthorized individual in violation of Act.

3.    The short title of the Act states, "The Legislature hereby finds and declares that persons receiving health care services have a right to expect that the confidentiality of individual identifiable medical information derived by health service providers be reasonably preserved. It is the intention of the Legislature in enacting this act, to provide for the confidentiality of individually identifiable medical information, while permitting certain reasonable and limited uses of that information."

4.    The Act specifically provides that "No provider of health care, health care service plan, or contractor shall disclose medical information regarding a patient of the provider of health care or an enrollee or subscriber of a health care service plan without first obtaining an authorization...." Cal. Civ. Code. § 56.10(a).

5.    The Act further provides that "Every provider of health care, health care service plan, pharmaceutical company, or contractor who creates, maintains,

preserves, stores, abandons, destroys, or disposes of medical records shall do so in a manner that preserves the confidentiality of the information contained therein. Any provider of health care, health care service plan, pharmaceutical company, or contractor who negligently creates, maintains, preserves, stores, abandons, destroys, or disposes of medical records shall be subject to the remedies ... provided under subdivisions (b) ... of Section 56.36." Cal. Civ. Code § 56.101.

6.     Cal. Civ. Code § 56.36(b) provides Plaintiff, and all other persons similarly situated, with a private right to bring an action against Defendant for violation of Civil Code § 56.101 by specifically providing that "[i]n addition to any other remedies available at law, any individual may bring an action against any person or entity who has negligently released confidential information or records concerning him or her in violation of this part, for either or both of the following: (1) ... nominal damages of one thousand dollars ($1,000)."

7.     In order to recover under the Act, "*it shall not be necessary that the plaintiff suffered or was threatened with actual damages*. The amount of actual damages, if any, sustained by the patient." (Emphasis added.)

8.     The value of PII/PHI as a commodity is measurable.[1] "PII, which companies obtain at little cost, has quantifiable value that is rapidly reaching a level comparable to the value of traditional financial assets."[2] It is so valuable to identity thieves that once PII/PHI has been disclosed, criminals often trade it on the "cyber black-market" for several years.

9.     As used herein, "PATIENTS" is defined as any natural person, whether or not still living, who received health care services from Defendant, and to whom medical information pertains, as defined by Cal. Civ. Code § 56.05(k).

---

[1] *See* Robert Lowes, *Stolen EHR [Electronic Health Record] Charts Sell for $50 Each on Black Market* (April 28, 2014), *available at* http://www.medscape.com/viewarticle/824192.
[2] *See* John T. Soma, et al., *Corporate Privacy Trend: The "Value" of Personally Identifiable Information ("PII") Equals the "Value" of Financial Assets*, 15 RICH. J.L. & TECH. 11, at *3-4 (2009) ("PII, which companies obtain at little cost, has quantifiable value that is rapidly reaching a level comparable to the value of traditional financial assets.") (Citations omitted).

10.     This class action is brought on behalf of Plaintiff and a putative class defined as all PATIENTS of Defendant who were sent a letter by or on behalf of Defendant on or about April 2, 2024, notifying them their PII/PHI was contained within files on Defendant's computer systems was involved in a data breach on or around September 19, 2023 (or the "Class").

11.     As alleged more fully below, Defendant created, maintained, preserved, and/or stored Plaintiff's and the Class members' individual identifiable medical information on Defendant's computer systems on or before September 19, 2023.

12.     Due to Defendant's mishandling of individual identifiable medical information recorded onto the Defendant's computer systems, there was an unauthorized release of Plaintiff's and the Class members' confidential medical information on or around September 19, 2023, in violation of Cal. Civ. Code § 56.101.

13.     As alleged more fully below, Defendant negligently created, maintained, preserved, and/or stored Plaintiff's and the Class members' individual identifiable medical information which allowed unauthorized access to and disclosure of Plaintiff's and the Class members' individual identifiable medical information was contained in or was made accessible by Defendant's computer systems, which constitutes an unauthorized release of their confidential medical information in violation of Cal. Civ. Code § 56.101 of the Act.

14.     Plaintiff, individually and on behalf of others similarly situated, seeks nominal damages of one thousand dollars ($1,000) for himself and each of the Class members, for each violation under Cal. Civ. Code § 56.36(b)(1), and actual damages per violation pursuant to Cal. Civ. Code § 56.36(b)(2).

15.     Additionally, Plaintiff, seeks injunctive relief and restitution individually and on behalf of others similarly situated for violations of the California Unfair Competition Law, Business and Professions Code §§ 17200, *et seq*. ("UCL").

16.     Plaintiff does not seek any relief greater than or different from the relief

sought for the Class of which Plaintiff is a member.  The action, if successful, will enforce an important right affecting the general public's interest and would confer a significant benefit, whether pecuniary or non-pecuniary, for a large class of persons. Private enforcement is necessary and places a disproportionate financial burden on Plaintiff in relation to Plaintiff's stake in the matter.

## JURISDICTION AND VENUE

17.     This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(d)(2) because the amount in controversy exceeds $5 million, exclusive of interests and costs, and there are more than 100 members in the proposed Class, and at least one member of the Class is a citizen of a state different from Defendant.

18.     This Court also has jurisdiction over supplemental claims under 28 U.S.C. § 1367(a) because these claims are so related that they form part of the same case or controversy.

19.     Venue is proper in this District under 28 U.S.C. § 1391 because Plaintiff resides in this District and a substantial part of the events or omissions giving rise to these claims occurred in this District.

## PARTIES

20.     At all times relevant, Plaintiff was a citizen and resident of Los Angeles County, in the State of California.

21.     At all times relevant, Plaintiff was a PATIENT of Defendant as defined by Cal. Civ. Code § 56.05(k).

22.     Defendant is a California nonprofit corporation with its principal place of business located at 1500 East Duarte Road, Duarte, California 91010.

23.     At all times relevant, Defendant is a "provider of health care" as defined by Cal. Civ. Code § 56.06(a) which serving approximately 134,000 patients each year across a network of locations in California, Arizona, Illinois and Georgia.[3]

---

[3] https://www.cityofhope.org/about-city-of-hope/expanding-hope

# **FACTUAL ALLEGATIONS**

## ***Defendant's Business Practices***

24.     Defendant is a health care provider and a National Cancer Institute-designated comprehensive cancer center[4] serving approximately 134,000 patients each year across a network of locations in California, Arizona, Illinois and Georgia.[5]

25.     As a part of Defendant's business practices, Defendant requires its patients to provide sensitive personal information as a condition of providing its services, including but not limited to an individual's name, date of birth, social security number, and medical information.

26.     Defendant stores and maintains the information that it collects from its patients, including the personal information of Plaintiff and the Class.

27.     Defendant's website states that Defendant respects the personal privacy of its patients and "is committed to protecting it."[6]

28.     In the Notice of Privacy Practices located on Defendant's website (the "Notice"), Defendant notes its legal obligation to maintain the privacy of its patient's protected health information (PHI).[7]

29.     The Notice also states, "whenever we use or disclose your PHI, we are required to abide by the terms of this Notice."[8]

30.     The Notice further outlines the ways in which Defendant may use and disclose a patient's PHI, including:

a.   When required by law;

b.   To provide treatment;

c.   Appointment reminder, test results, treatment alternatives, etc.;

d.   Health-related benefits and services;

---

[4] https://www.cityofhope.org/careers/why-work-at-city-of-hope/the-story-of-city-of-hope
[5] https://www.cityofhope.org/about-city-of-hope/expanding-hope
[6] https://www.cityofhope.org/about-city-of-hope/legal-and-privacy-policies/website-policies
[7] https://www.cityofhope.org/sites/www/files/2024-03/COH-Notice-of-Privacy-Practices-09-2023_English.pdf
[8] *Id.*

- 6 -

    e. Health information exchanges;

    f. For payment purposes;

    g. To carry-out health care operations;

    h. To perform fundraising activities;

    i. For the patient directory

    j. To inform individuals involved in your care or in payment for your care;

    k. Disaster relief;

    l. For research purposes; and

    m. Business associates.[9]

31.     The Notice also lists the instances in which a patient's written authorization is required for use and disclosure, including:

    a. The use and disclosure of highly confidential information; and

    b. The use and disclosure for marketing purposes.

32.     The Notice also includes a list of rights retained by Defendant's patients regarding the use and disclosure of PHI, including:

    a. The right to request restrictions on disclosure and use;

    b. The right to request confidential communication/how Defendant communicates with a patient;

    c. The right to access their own City of Hope record;

    d. The right to amend their own City of Hope record; and

    e. The right to an accounting of disclosures.

33.     Despite these representations and guarantees made by Defendant, Defendant failed to adequately protect the personal information of Plaintiff and the Class.

34.     Despite these representations and guarantees made by Defendant, Defendant failed to implement adequate security measures regarding the personal

---

[9] *Id.*

CLASS ACTION COMPLAINT

information of Plaintiff and the Class.

35.     Defendant owed Plaintiff and the Class a duty to provide reasonable and adequate security measures to secure, protect, and safeguard their sensitive personal information.

36.     Plaintiff and the Class reasonably relied on Defendant to maintain and store their sensitive personal information in a responsible manner and to only disclose their sensitive personal information to authorized persons.

37.     Defendant's lax security practices that allowed this intrusion to occur have harmed Plaintiff and the Class members by, among other injuries: (a) adding to their financial obligations by exposing them to financial fraud and placing them at an increased risk of fraudulent charges; (b) complicating diagnosis, prognosis, and treatment for their medical conditions by placing them at an  increased risk of having inaccurate medical information in their files; and/or (c) increasing the risk of other potential personal, professional, or financial harms that could result from the unauthorized exposure of their sensitive personal information.

38.     At a minimum, Defendant failed to implement: (1) reasonable and adequate security measures designed to prevent this attack even though Defendant knew or should have known that Defendant's electronic systems were a target for hackers; and (2) reasonable and adequate security protocols to promptly detect the unauthorized intrusion into and removal from its network of sensitive personal information of Defendant's patients.

### ***The Data Breach***

39.     Plaintiff and the Class are patients who paid and provided their sensitive personal information to Defendant for the purpose of received Defendant's health care services.

40.     Prior to September 19, 2023, Defendant created, maintained, preserved, and/or stored Plaintiff's and the Class members' individually identifiable medical information, PII/PHI, on Defendant's computer systems, including but not limited to

Plaintiff's and the Class members' name, contact information (e.g., email address, phone number), date of birth, social security number, driver's license or government identification, financial details (e.g., bank account number and/or credit card details), health insurance information, and medical information.

41.     Such medical information included or contained an element of personal identifying information sufficient to allow identification of the individual, such as Plaintiff's and the Class members' names, dates of birth, social security number, and medical information, or other information that, alone or in combination with other publicly available information, reveals Plaintiff's and the Class members' identity.

42.     On or around September 19, 2023, an unauthorized third party accessed a subset of Defendant's systems and retained access to Defendant's systems until on or around October 12, 2023 (the "Data Breach").[10] For twenty-three (23) days, the unauthorized third party accessed, viewed, exfiltrated and/or obtained copies of certain files from Defendant's network containing Plaintiff's and the Class members' personal information, including PII/ PHI, through the Data Breach.

43.     On or around December 12, 2023, Defendant notified the U.S. Department of Health and Human Services Office for Civil Rights ("DHHS") on the Data Breach, indicating that 501 individuals had been affected.[11]

44.     However, on April 2, 2024, Defendant, through its attorney, notified the Office of the Maine Attorney General of the Data Breach, indicating that the total number of individuals affected was 827,149.[12] Defendant's notice to the Office of the Maine Attorney General also indicated that the Data Breach occurred from July 7, 2023 through October 15, 2023.[13]

45.     Also on or around April 2, 2024, Defendant sent a letter via U.S. mail

---

[10] https://www.cityofhope.org/notice-of-data-security-incident
[11] https://ocrportal.hhs.gov/ocr/breach/breach_report.jsf
[12] https://apps.web.maine.gov/online/aeviewer/ME/40/1bb296e2-ea79-438c-b357-28ef738a0bf6.shtml
[13] *Id.*

notifying Plaintiff and the Class members of the Data Breach and informing Plaintiff that his information was accessed, viewed, exfiltrated and/or obtained by an unauthorized third party.

46.     The letter stated that on or about October 13, 2023, Defendant "became aware of suspicious activity on a subset of its systems and immediately instituted mitigation measures."

47.     The letter further stated that based on a "detailed review of the copied files," Defendant "determined that some of these files may have contained [Plaintiff's] information."

48.     Other than offering Plaintiff Kroll identity monitoring at no cost to Plaintiff for two years, Defendant offered no substantive steps to help victims like Plaintiff and Class Members to protect themselves. On information and belief, Defendant sent a similar generic letter to all other individuals affected by the Data Breach.

49.     Additionally, although the letter states that Defendant discovered the breach on October 13, 2023, Defendant failed to notify Plaintiff and the Class until April 2, 2024, a full one-hundred and seventy-two (172) days after the Breach.

50.     This significant delay in notification exacerbated the risk of fraud and the injuries incurred by Plaintiff and the Class. Additionally, due the Defendant's delay in notification, Plaintiff and the Class were deprived of the opportunity to mitigate their injuries and risk of fraud.

51.     Defendant's one-hundred and seventy-two (172) day delay in notification demonstrates Defendant's lack of care regarding their security practices and procedures.

52.     Moreover, the discrepancies between the information that Defendant provided to the DHHS, the Office of the Maine Attorney General, and to Plaintiff and the Class make it difficult to determine the full scope of the Data Breach.

CLASS ACTION COMPLAINT

53.     Upon information and belief, Plaintiff's personal information and his PII/PHI, such as his name, contact information, (e.g., email address, phone number), date of birth, social security number, driver's license number or other government identification, financial details (e.g., bank account number and/or credit card details), health insurance information, medical records and information about medical history and/or associated conditions, and/or unique identifiers to associate individuals with City of Hope (e.g., medical record number), and medical information, were accessed, viewed, exfiltrated and/or obtained by unauthorized parties through and as a result of the Data Breach.

54.     After receiving the "Notice of Data Breach" letter, Plaintiff spent considerable time and effort taking actions to attempt to mitigate the impact of the Data Breach, including monitoring accounts, regularly reviewing account statements, and using credit monitoring services. This is time Plaintiff otherwise would have spent performing other activities or leisurely events for the enjoyment of life, and this loss of time was a direct result of the Data Breach.

55.     As a result of the Data Breach, Plaintiff has suffered invasion of privacy and emotional distress as a result of the unauthorized release of his PII/PHI, which Defendant had a duty to protect from unauthorized disclosure, including anxiety, concern, and uneasiness about unauthorized parties viewing and potentially using his personal information, as well as unease about Defendant having additional data breaches or otherwise disclosing his personal information in the future. In addition to Plaintiff suffering actual injury from lost time, invasion of privacy, Plaintiff also suffers the imminent and continuing injury arising from the heightened risk of fraud and identity theft due to the Data Breach.

56.     As a result of Defendant's action and/or inactions, and the Data Breach, Plaintiff has suffered damages, including (i) an imminent, immediate and the continuing heightened increased risk of identity theft and identity fraud – risks justifying expenditures for protective and remedial services for which they are

entitled to compensation, (ii) invasion of privacy, (iii) breach of the confidentiality of their PII, (iv) statutory damages under the CMIA, (v) deprivation of the value of their PII for which there is a well-established national and international market, and/or (vi) the financial and temporal cost of monitoring their credit, monitoring financial accounts, and mitigating damages.

57.    Also, specifically, on or around March 18, 2024, Plaintiff noticed unauthorized and fraudulent charges on his bank account by a company called Stash Capital and was required to spend time and effort to mitigate harm to him and forced to change his bank account number to prevent further fraudulent transactions.

58.    Upon information and belief, the above-mentioned incident was a result of the Data Breach and Defendant's failure to secure Plaintiff's sensitive personal information, which was accessed, viewed, exfiltrated and/or obtained by unauthorized parties in the Data Breach.

59.    Given the sensitive nature of the information provided by its patients to Defendant, Defendant's patients – including Plaintiff and the members of the Class – are especially concerned with the breach of confidentiality of their PII and PHI.

60.    The private health and personal information taken from Defendant's system is particularly sensitive because medical information is valuable to cybercriminals and has routinely been sold and traded on the dark web.

61.    As a provider of health care, Defendant is required by the Act to ensure that medical information regarding a patient of Defendant is not disclosed or disseminated or released without their patients' authorization, and to protect and preserve the confidentiality of the medical information regarding PATIENTS such as Plaintiff and the Class members, under Cal. Civ. Code §§ 56.10, 56.101 and 56.36.

62.    As a provider of health care, Defendant is required by the Act not to disclose medical information regarding a patient of Defendant without first obtaining an authorization under Cal. Civ. Code § 56.10(a).

63.     As a provider of health care, Defendant is required by the Act to create, maintain, preserve, and store medical records in a manner that preserves the confidentiality of the information contained therein under Cal. Civ. Code § 56.101(a).

64.     As a provider of health care, Defendant is required by the Act to protect and preserve confidentiality of electronic medical information of Plaintiff and the Class in its possession under Cal. Civ. Code § 56.101(b)(1)(A).

65.     As a provider of health care, Defendant is required by the Act to take appropriate preventive actions to protect the confidential information or records against release consistent with Defendant's obligations under the Act, under Cal. Civ. Code § 56.36(e)(2)(E), or other applicable state law, and the Health Insurance Portability and Accountability Act of 1996 (Public Law 104-191) (HIPAA) and all HIPAA Administrative Simplification Regulations in effect on January 1, 2012, contained in Parts 160, 162, and 164 of Title 45 of the Code of Federal Regulations, and Part 2 of Title 42 of the Code of Federal Regulations, including, but not limited to, all of the following:

     i.    Developing and implementing security policies and procedures.

     ii.    Designating a security official who is responsible for developing and implementing its security policies and procedures, including educating and training the workforce.

     iii.    Encrypting the information or records, and protecting against the release or use of the encryption key and passwords, or transmitting the information or records in a manner designed to provide equal or greater protections against improper disclosures.

66.     Defendant had the resources necessary to protect and preserve the confidentiality of electronic medical information of Plaintiff and the Class in its possession or accessible on its computer systems, but neglected to adequately implement data security measures according to its representations to Plaintiff and the Class and as required by the Act, despite its obligation to do so.

67.     Additionally, the risk of vulnerabilities in its computer and data systems of being exploited by an unauthorized third party trying to steal Plaintiff's and the Class' electronic medical information was foreseeable and/or known to Defendant.

68.     As warned by HIPAA Journal posted on November 1, 2018, "Healthcare organization[s] need to ensure that their systems are well protected against cyberattacks, which means investing in technologies to secure the network perimeter, detect intrusions, and block malware and phishing threats."

69.     Defendant negligently created, maintained, preserved, and/or stored Plaintiff's and the Class members' individually identifiable medical information and allowed unauthorized access and disclosure or release of such information without Plaintiff's and the Class members' prior written authorization, constituting an unauthorized release of their confidential, personal identifiable information and confidential medical information in violation of Cal. Civ. Code § 56.101.

70.     California law requires a business to notify any California resident whose unencrypted personal information, as defined, was acquired, or reasonably believed to have been acquired, by an unauthorized person, pursuant to Cal. Civ. Code § 1798.82(a).

71.     The HIPAA Breach Notification Rule, 45 CFR §§ 164.400-414, requires HIPAA covered entities to provide notification following a breach of unsecured protected health information.

72.     Following a breach of unsecured protected health information, covered entities must provide notification of the breach to affected individuals.

73.     Covered entities must *only* provide the required notifications if the breach involved unsecured protected health information, which is protected health information that has not been rendered unusable, unreadable, or indecipherable to unauthorized persons through the use of a technology or methodology specified by the Secretary of the U.S. Dept. of Health and Human Services in guidance.

74.     Under approved guidance of the U.S. Dept. of Health and Human Services, protected health information ("PHI") is rendered unusable, unreadable, or indecipherable to unauthorized individuals if (1) electronic PHI has been encrypted as specified in the HIPAA Security Rule by "the use of an algorithmic process to transform data into a form in which there is a low probability of assigning meaning without use of a confidential process or key" (45 CFR 164.304 definition of encryption) and (2) such confidential process or key that might enable decryption has not been breached.

75.     By notifying Plaintiff and the Class of the Breach, through the notification letter, Defendant has represented that it determined that Plaintiff's and the Class's PII/PHI was either not encrypted at all, or if it was encrypted, the encryption was breached by an unauthorized third party.

76.     As a result, Defendant was negligent for failing to encrypt or adequately encrypt the PII/PHI of Plaintiff and the Class.

77.     Further, because the PII/PHI of Plaintiff and the Class was not rendered unusable, unreadable, or indecipherable, the unauthorized third party who accessed Plaintiff's and the Class's PII/PHI was able to access and acquire their sensitive personal information obtained and stored by Defendant.

78.     While the HIPAA Breach Notification Rule does not explicitly require a covered entity to update the DHHS or affected individuals as new information regarding the breach is discovered, failing to do so is strong indication of Defendant's lack of duty of care regarding its obligations under the law and to its PATIENTS, including Plaintiff and the Class members.

### *Defendant Knew or Should Have Known PII/PHI Are High Risk Targets*

79.     Defendant knew or should have known that PII/PHI like that at issue here, are high risk targets for identity thieves.

80.     The Identity Theft Resource Center reported that the business sector had the largest number of breaches in 2018. According to the ITRC this sector suffered

571 data breaches exposing at least 415,233,143 million records in 2018.[14] Further, the ITRC identified "hacking" as the most common form of data breach in 2018, accounting for 39% of data breaches.

81.     Prior to the breach there were many reports of high-profile data breaches that should have put a company like Defendant on high alert and forced it to closely examine its own security procedures, as well as those of third parties with which it did business and gave access to its subscriber PII. Notable breaches included Capital One, which announced that in March 2019 a hacker had gained access to 100 million U.S. customer accounts and credit card applications. Similarly, in December 2018, Marriott International announced a data breach that affected up to 500 million individuals. The data breach allowed hackers to access customer names, physical addresses, phone numbers, email addresses, passport numbers, dates of birth, gender, loyalty program account information, and payment card information.[15]

82.     As such, Defendant was aware that PII is at high risk of theft, and consequently should have but did not take appropriate and standard measures to protect Plaintiff's and Class members' PII against data breaches and unauthorized disclosures that Defendant should have anticipated and guarded against.

### PI/PHI  Is a Valuable Property Right that Must Be Protected

83.     The California Constitution guarantees every Californian a right to privacy. And PII is a recognized valuable property right.[16] California has repeatedly

---

[14] Identity Theft Resource Center, *2018 End-of-Year Data Breach Report, available at* https://www.idtheftcenter.org/wp-content/uploads/2019/02/ITRC_2018-End-of-Year-Aftermath_FINAL_V2_combinedWEB.pdf.

[15] *See* https://www.consumer.ftc.gov/blog/2018/12/marriott-data-breach#:~:text=Marriott%20International%20says%20that%20a,up%20to%20500%20million%20people.&text=The%20hotel%20chain%20says%20the,10%2C%202018%20could%20be%20affected

[16]     *See* John T. Soma, et al., *Corporate Privacy Trend: The "Value" of Personally Identifiable Information ("PII") Equals the "Value" of Financial Assets*, 15 RICH. J.L. & TECH. 11, at *2 (2009) ("PII, which companies obtain at little cost, has quantifiable value that is rapidly reaching a level comparable to the value of traditional financial assets.") (citations omitted).

CLASS ACTION COMPLAINT

recognized this property right, most recently with the passage of the California Consumer Privacy Act of 2018.

84.     In a FTC roundtable presentation, former Commissioner, Pamela Jones Harbour, underscored the property value attributed to PII by observing:

> Most consumers cannot begin to comprehend the types and amount of information collected by businesses, or why their information may be commercially valuable. Data is currency. The larger the data set, the greater potential for analysis – and profit.[17]

85.     The value of PII as a commodity is measurable. "PII, which companies obtain at little cost, has quantifiable value that is rapidly reaching a level comparable to the value of traditional financial assets."[18] It is so valuable to identity thieves that once PII has been disclosed, criminals often trade it on the "cyber black-market" for several years.

86.     Companies recognize PII as an extremely valuable commodity akin to a form of personal property. For example, Symantec Corporation's Norton brand has created a software application that values a person's identity on the black market.[19]

87.     As a result of its real value and the recent large-scale data breaches, identity thieves and cyber criminals openly post credit card numbers, Social Security numbers, PII and other sensitive information directly on various illicit Internet websites making the information publicly available for other criminals to take and use. This information from various breaches, including the information exposed in the Data Breach, can be aggregated and become more valuable to thieves and more damaging to victims. In one study, researchers found hundreds of websites displaying stolen PII and other sensitive information. Strikingly, none of these websites were blocked by Google's safeguard filtering mechanism – the "Safe Browsing list."

---

[17]     FTC, *Statement of FTC Commissioner Pamela Jones Harbour* (Remarks Before FTC Exploring Privacy Roundtable) (Dec. 7, 2009), https://www.ftc.gov/public-statements/2009/12/remarks-ftc-exploring-privacy-roundtable.
[18]     *See* Soma, *Corporate Privacy Trend, supra*.
[19]     Risk Assessment Tool, Norton 2010, www.everyclickmatters.com/victim/assessment-tool.html.

CLASS ACTION COMPLAINT

88.     Recognizing the high value that consumers place on their PII, some companies now offer consumers an opportunity to sell this information to advertisers and other third parties. The idea is to give consumers more power and control over the type of information they share – and who ultimately receives that information. By making the transaction transparent, consumers will make a profit from the surrender of their PII.[20] This business has created a new market for the sale and purchase of this valuable data.[21]

89.     Consumers place a high value not only on their PII, but also on the privacy of that data. Researchers shed light on how much consumers value their data privacy – and the amount is considerable. Indeed, studies confirm that "when privacy information is made more salient and accessible, some consumers are willing to pay a premium to purchase from privacy protective websites."[22]

90.     One study on website privacy determined that U.S. consumers valued the restriction of improper access to their PII between $11.33 and $16.58 per website.[23]

91.     Given these facts, any company that transacts business with a consumer and then compromises the privacy of consumers' PII has thus deprived that consumer of the full monetary value of the consumer's transaction with the company.

### Theft of PI/PHII Has Grave and Lasting Consequences for Victims

92.     A data breach is an incident in which sensitive, protected, or confidential data has potentially been viewed, stolen, or used by an individual unauthorized to do

---

[20]     Steve Lohr, You Want My Personal Data? Reward Me for It, N.Y. Times (July 16, 2010) available at https://www.nytimes.com/2010/07/18/business/ 18unboxed.html.

[21]     See Julia Angwin and Emil Steel, Web's Hot New Commodity: Privacy, Wall Street Journal (Feb. 28, 2011) available at https://www.wsj.com/articles/SB10001424052748703529004576 160764037920274.

[22]     Janice Y. Tsai, et al., The Effect of Online Privacy Information on Purchasing Behavior, An Experimental Study Information Systems Research 22(2) 254, 254 (June 2011), available at https://www.jstor.org/stable/23015560?seq=1# page_scan_tab_contents.

[23]     II–Horn, Hann, et al., The Value of Online Information Privacy: An Empirical Investigation (Mar. 2003) at table 3, available at https://ideas.repec.org/p/wpa/wuwpio/0304001.html (emphasis added).

so. As more consumers rely on the internet and apps on their phone and other devices to conduct every-day transactions, data breaches are becoming increasingly more harmful.

93.     Theft or breach of PII is serious. The California Attorney General recognizes that "[f]oundational" to every Californian's constitutional right to privacy is "information security: if companies collect consumers' personal data, they have a duty to secure it. An organization cannot protect people's privacy without being able to secure their data from unauthorized access."[24]

94.     The United States Government Accountability Office noted in a June 2007 report on Data Breaches ("GAO Report") that identity thieves use PII to take over existing financial accounts, open new financial accounts, receive government benefits and incur charges and credit in a person's name.[25] As the GAO Report states, this type of identity theft is so harmful because it may take time for the victim to become aware of the theft and can adversely impact the victim's credit rating.

95.     In addition, the GAO Report states that victims of identity theft will face "substantial costs and inconveniences repairing damage to their credit records … [and their] good name." According to the FTC, identity theft victims must spend countless hours and large amounts of money repairing the impact to their good name and credit record.[26]

96.     Identity thieves use personal information for a variety of crimes, including credit card fraud, phone or utilities fraud, and bank/finance fraud.[27]

---

[24]     California Data Breach Report, Kamala D. Harris, Attorney General, California Department of Justice, February 2016.
[25]     *See* GAO, GAO Report 9 (2007) *available at* http:///www.gao.gov/new.items/d07737.pdf.
[26]     *See* FTC Identity Theft Website: https://www.consumer.ftc.gov/features/feature-0014-identity-theft.
[27]     The FTC defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority." 16 C.F.R. § 603.2. The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, social security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number." *Id*.

CLASS ACTION COMPLAINT

According to Experian, "[t]he research shows that personal information is valuable to identity thieves, and if they can get access to it, they will use it" to among other things: open a new credit card or loan; change a billing address so the victim no longer receives bills; open new utilities; obtain a mobile phone; open a bank account and write bad checks; use a debit card number to withdraw funds; obtain a new driver's license or ID; use the victim's information in the event of arrest or court action.[28]

97. According to the IBM and Ponemon Institute's 2019 "Cost of a Data Breach" report, the average cost of a data breach per consumer was $150 per record.[29] Other estimates have placed the costs even higher. The 2013 Norton Report estimated that the average cost per victim of identity theft – a common result of data breaches – was $298 dollars.[30] And in 2019, Javelin Strategy & Research compiled consumer complaints from the FTC and indicated that the median out-of-pocket cost to consumers for identity theft was $375.[31]

98. A person whose PII has been compromised may not see any signs of identity theft for years. According to the GAO Report:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.

---

[28] *See* Susan Henson, *What Can Identity Thieves Do with Your Personal Information and How Can You Protect Yourself?*, EXPERIAN (Sept. 7, 2017), *available at* https://www.experian.com/blogs/ask-experian/what-can-identity-thieves-do-with-your-personal-information-and-how-can-you-protect-yourself/.

[29] Brook, *What's the Cost of a Data Breach in 2019*, *supra*.

[30] Norton By Symantec, 2013 Norton Report 8 (2013), *available at* https://yle.fi/tvuutiset/uutiset/upics/liitetiedostot/norton_raportti.pdf.

[31] Facts + Statistics: *Identity Theft and Cybercrime*, Insurance Information Institute, *available at* https://www.iii.org/fact-statistic/facts-statistics-identity-theft-and-cybercrime (citing the Javelin report).

99.   For example, in 2012, hackers gained access to LinkedIn's users' passwords. However, it was not until May 2016, four years after the breach, that hackers released the stolen email and password combinations.[32]

100.   It is within this context that Plaintiff and thousands of other individuals subjected to the Data Breach must now live with the knowledge that their PII/PHI was disclosed to and obtained by unauthorized persons, and is likely forever in cyberspace and likely available for sale on the dark web or black market.

## CLASS ACTION ALLEGATIONS

101.   Plaintiff brings this action on Plaintiff's own behalf individually and on behalf of all other persons similarly situated.  The putative class that Plaintiff seeks to represent is composed of:

**Nationwide Class**
All PATIENTS of Defendant for whom Defendant maintained computer systems containing their PII/PHI, before September 19, 2023, and were sent a letter by or on behalf of Defendant on or about April 2, 2024, notifying them their PII/PHI was contained within files on Defendant's computer systems was involved in the Data Breach on or around September 19, 2023.

**California Sub-Class**
All PATIENTS of Defendant in the State of California for whom Defendant maintained computer systems containing their PII/PHI, before September 19, 2023, and were sent a letter by or on behalf of Defendant on or about April 2, 2024, notifying them their PII/PHI was contained within files on Defendant's computer systems was involved in the Data Breach on or around September 19, 2023.

102.   The Class is comprised of and includes the Nationwide Class and the California Sub-Class.

103.   Excluded from the Class are the natural persons who are directors, officers, and employees of Defendant.

104.   Plaintiff reserves the right to amend or modify the Class definition with greater particularity or further division into subclasses or limitation to particular

---

[32]   *See* Cory Scott, *Protecting Our Members*, LINKEDIN (May 18, 2016), *available at* https://blog.linkedin.com/2016/05/18/protecting-our-members.

issues as warranted, and as Plaintiff discovers additional facts during future investigations.

105. Plaintiff expressly disclaims that Plaintiff is seeking a class-wide recovery for personal injuries attributable to Defendant's conduct.

106. The members of the Class are estimated to be in the hundreds of thousands, and are so numerous that joinder of all members is impracticable.

107. While the exact number of the Class members is unknown to Plaintiff at this time, such information can be ascertained through appropriate discovery, from records maintained by Defendant.

108. There is a well-defined community of interest among the members of the Class because common questions of law and fact predominate, Plaintiff's claims are typical of the members of the class, and Plaintiff can fairly and adequately represent the interests of the Class.

109. Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting solely individual members of the Class.

110. Among the questions of law and fact common to the Class are:

a) Whether Plaintiff and the Class members had PII/PHI and confidential medical information on Defendant's computer systems on or before September 19, 2023;

b) Whether Defendant was required to obtain the written consent of Plaintiff and the Class members before it allowed unauthorized access and disclosure of Plaintiff's and the Class members' PII/PHI and confidential medical information on Defendant's computer systems;

c) Whether Defendant obtained the written consent of Plaintiff and the Class members before it allowed unauthorized access and disclosure of Plaintiff's and the Class members' PII/PHI and confidential medical information on Defendant's computer systems;

CLASS ACTION COMPLAINT

d) Whether Defendant allowed unauthorized access and disclosure of Plaintiff's and the Class members' PII/PHI and confidential medical information on Defendant's computer systems was without the prior written authorization of Plaintiff and the Class members, as required by Cal. Civ. Code § 56.10;

e) Whether Defendant allowed unauthorized access and disclosure of Plaintiff's and the Class members' PII/PHI and confidential medical information on Defendant's computer systems constitutes a release of Plaintiff's and the Class members' PII/PHI and confidential medical information in violation of Cal. Civ. Code § 56.101;

f) Whether Defendant's violations of Cal. Civ Code §§ 56.10 and 56.101 constitutes unlawful violations of California Business and Professions Code §§ 17200, *et seq.*; and

g) Whether Plaintiff and the Class are entitled to nominal damages, actual damages, punitive damages, and/or injunctive relief.

111. Plaintiff's claims are typical of those of the other Class members because Plaintiff, like every other Class member, was exposed to virtually identical conduct and is entitled to nominal damages of one thousand dollar ($1,000) per violation pursuant to Cal. Civ. Code §§ 56.101, 56.36(b)(1), and actual damages per violation pursuant to Cal. Civ. Code §§ 56.101, 56.36(b)(2).

112. Plaintiff will fairly and adequately protect the interests of the Class.

113. Moreover, Plaintiff has no interest that is contrary to or in conflict with those of the Class Plaintiff seeks to represent during the Class Period.

114. Plaintiff has retained competent counsel experienced in class action litigation to further ensure such protection and intend to prosecute this action vigorously.

115. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual

CLASS ACTION COMPLAINT

members of the Class, which would establish incompatible standards of conduct for the Defendant in the State of California and would lead to repetitious trials of the numerous common questions of fact and law in the State of California.

116.   Plaintiff knows of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action. As a result, a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

117.   Proper and sufficient notice of this action may be provided to the Class members through direct mail and/or publication.

a) The nature of this action and the nature of laws available to Plaintiff and the members of Class make the use of the class action format a particularly efficient and appropriate procedure to afford relief to Plaintiff and Class for the claims alleged and the disposition of whose claims in a class action will provide substantial benefits to both the parties and the Court because: If each member of the Class were required to file an individual lawsuit, the Defendant would necessarily gain an unconscionable advantage since they would be able to exploit and overwhelm the limited resources of each individual member of the Class with its vastly superior financial and legal resources;

b) The costs of individual suits could unreasonably consume the amounts that would be recovered;

c) Proof of a common business practice or factual pattern which Plaintiff experienced is representative of that experienced by the Class and will establish the right of each of the members to recover on the causes of action alleged;

d) Individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation; and

CLASS ACTION COMPLAINT

e) The disposition of the claims of the members of Class through this class action will produce salutary by-products, including a therapeutic effect upon those who indulge in fraudulent practices, and aid to legitimate business enterprises by curtailing illegitimate competition.

118. Moreover, the Class members' individual damages are insufficient to justify the cost of litigation, so that in the absence of class treatment, Defendant's violations of law inflicting substantial damages in the aggregate would go unremedied without certification of the Class.

119. Absent certification of this action as a class action, Plaintiff and the members of the Class will continue to be damaged by the unauthorized release of their individual identifiable medical information.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**Violations of the Confidentiality of Medical Information Act (CMIA)**
**California Civil Code §§ 56, *et seq.***
***(On behalf of Plaintiff and the California Sub-Class)***

120. Plaintiff and the Class incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

121. Section 56.10(a) of the Cal. Civ. Code provides that "[a] provider of health care, health care service plan, or contractor shall not disclose medical information regarding a patient of the provider of health care or an enrollee or subscriber of a health care service plan without first obtaining an authorization[.]"

122. Defendant is a "contractor" within the meaning of Cal. Civ. Code § 56.05(d) and/or a "provider of healthcare" within the meaning of Cal. Civ. Code § 56.06 and/or a "business organized for the purpose of maintaining medical information" and/or a "business that offers software or hardware to consumers . . . that is designed to maintain medical information" within the meaning of Civil Code § 56.06(a) and (b), and maintained and continues to maintain "medical information,"

within the meaning of Cal. Civ. Code § 56.05(j), for "PATIENTS" of Defendant, within the meaning of Cal. Civ. Code § 56.05(k).

123.    Plaintiff and all members of the Class are "PATIENTS" within the meaning of Cal. Civ. Code § 56.05(k) and are "endanger[ed]" within the meaning of Cal. Civ. Code § 56.05(e) because Plaintiff and the Class fear that disclosure of their medical information could subject them to harassment or abuse.

124.    Plaintiff and the respective Class members, as PATIENTS, had their individually identifiable "medical information," within the meaning of Cal. Civ. Code § 56.05(j), created, maintained, preserved, and stored on Defendant's systems at the time of the Data Breach.

125.    Defendant, through inadequate security, allowed an unauthorized third-party to access Plaintiff and the Class members' medical information, without the prior written authorization of Plaintiff and the Class members, as required by Cal. Civ. Code § 56.10 of the CMIA.

126.    Defendant created, maintained, preserved, and/or stored Plaintiff's and the Class members' individual identifiable "medical information," within the meaning of Cal. Civ. Code § 56.05(j), including, but not limited to Plaintiff's and Class members' names date of birth, social security number, and medical information on the Defendant's computer systems.

127.    Defendant did not preserve the confidentiality of Plaintiff's and the Class's information, and negligently failed to protect and preserve confidentiality of electronic medical information of Plaintiff and the Class in its possession against disclosure and/or release, including but not limited to, by failing to conduct and require adequate employee education and training, failing to adequately review & revise information security, failing to have adequate information security, and failing to have adequate privacy policies and procedures in place, as required under Cal. Civ. Code §§ 56.10(a), 56.101(a), 56.101(b)(1)(A), and 56.36(e)(2)(E).

CLASS ACTION COMPLAINT

128. Due to Defendant's negligent creation, maintenance, preservation, and/or storage of Plaintiff's and the Class members' individually identifiable medical information contained in or made accessible by a Defendant's computer systems, Plaintiff's and the Class's PII/PHI and confidential medical information was accessed and/or viewed by at least one unauthorized third party, without first obtaining an authorization, constituting a disclosure in violation of Cal. Civ. Code § 56.10(a).

129. Due to Defendant's negligent creation, maintenance, preservation, and/or storage of Plaintiff's and the Class members' individually identifiable medical information contained in or made accessible by a Defendant's computer systems, Plaintiff's and the Class's PII/PHI and confidential medical information was accessed and/or viewed by at least one unauthorized third party, constituting a release in violation of Cal. Civ. Code § 56.101(a).

130. Due to Defendant's negligent creation, maintenance, preservation, and/or storage of Plaintiff's and the Class members' individually identifiable medical information contained in or made accessible by a Defendant's computer systems, Plaintiff's and the Class's PII/PHI and confidential medical information was accessed and/or viewed by at least one unauthorized third party, constituting a release in violation of Cal. Civ. Code § 56.101(b)(1)(A).

131. Plaintiff and the Class members' medical information that was the subject of the data breach included "electronic medical records" or "electronic health records" as referenced by Cal. Civ. Code § 56.101(c) and defined by 42 U.S.C. § 17921(5).

132. In violation of Cal. Civ. Code § 56.101(b)(1)(A), Defendant's electronic health record system or electronic medical record system failed to protect and preserve the integrity of electronic medical information. Plaintiff and the Class members' medical information was viewed by unauthorized individuals as a direct and proximate result of Defendant's violations of Cal. Civ. Code § 56.101(b)(1)(A).

133.   Defendant violated Cal. Civ. Code § 56.36 through their failure to maintain and preserve the confidentiality of the medical information of Plaintiff and the Class members.

134.   As a result of Defendant's above-described conduct in violation of the Act, Plaintiff and the Class members have suffered (and will continue to suffer) economic damages and other injury and actual harm in the form of, *inter alia*, (i) an imminent, immediate and the continuing increased risk of identity theft, identity fraud and medical fraud – risks justifying expenditures for protective and remedial services for which they are entitled to compensation, (ii) invasion of privacy, (iii) breach of the confidentiality of their PII/PHI, (iv) statutory damages under the California CMIA, (v) deprivation of the value of their PII/PHI, for which there is a well-established national and international market, and/or (vi) the financial and temporal cost of monitoring their credit, monitoring their financial accounts, and mitigating their damages from the unauthorized disclosure and/or release of their individual identifiable "medical information" made unlawful by Cal. Civ. Code §§ 56.10, 56.101.

135.   As a result of Defendant's above-described conduct in violation of the Act, Plaintiff and the Class seek nominal damages of one thousand dollars ($1,000) for each violation under Cal. Civ. Code §56.36(b)(1), and actual damages suffered, if any, pursuant to Cal. Civ. Code § 56.36(b)(2), injunctive relief, as well as punitive damages of up to $3,000 per Plaintiff and each Class member, and attorneys' fees, litigation expenses and court costs, pursuant to Cal. Civ. Code § 56.35.

**SECOND CAUSE OF ACTION**
**Violation of California's Unfair Competition Law (UCL)**
**California Business & Professions Code §§ 17200, *et seq*.**
***(On behalf of Plaintiff and the California Sub-Class)***

136.   Plaintiff and the Class incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

137. The acts, misrepresentations, omissions, practices, and non-disclosures of Defendant as alleged herein constituted unlawful, fraudulent and unfair business acts and practices within the meaning of California Business & Professions Code §§ 17200, *et seq*.

138. The UCL prohibits any "unlawful," "fraudulent" or "unfair" business act or practice and any false or misleading advertising, as those terms are defined by the UCL and relevant case law. By virtue of the above-described wrongful actions, inaction, omissions, and want of ordinary care that directly and proximately caused the Data Breach, Defendant engaged in unlawful, unfair and fraudulent practices within the meaning, and in violation of, the UCL.

139. In the course of conducting its business, Defendant committed "unlawful" business practices by, *inter alia*, knowingly failing to design, adopt, implement, control, direct, oversee, manage, monitor and audit appropriate data security processes, controls, policies, procedures, protocols, and software and hardware systems to safeguard and protect Plaintiff and Class members' PII/PHI, and by violating the statutory and common law alleged herein, including, *inter alia*, California's Confidentiality of Medical Information Act (Cal. Civ. Code §§ 56.10(a), (e); 56.101(a), 56.101(b)(1)(A); 56.36), the Health Insurance Portability and Accountability Act of 1996, (42 U.S.C. § 1302d; 45 C.F.R. §§ 164.306(a), (d), (e); 164.308(a); 164.312(a), (d), (e); 164.316(a), (b)), and Article I, Section 1 of the California Constitution (California's constitutional right to privacy).

140. Plaintiff and Class members reserve the right to allege other violations of law by Defendant constituting other unlawful business acts or practices.

141. Defendant's above-described wrongful actions, inaction, omissions, and want of ordinary care are ongoing and continue to this date.

142. Defendant also violated the UCL's unlawful prong by breaching contractual obligations created by its Privacy Policy and by knowingly and willfully or, in the alternative, negligently and materially violating Cal. Bus. & Prof. Code §

22576, which prohibits a commercial website operator from "knowingly and willfully" or "negligently and materially" failing to comply with the provisions of their posted privacy policy.

143. Defendant's above-described wrongful actions, inaction, omissions, want of ordinary care, misrepresentations, practices, and non-disclosures also constitute "unfair" business acts and practices in violation of the UCL in that Defendant's wrongful conduct is substantially injurious to consumers, offends legislatively declared public policy, and is immoral, unethical, oppressive, and unscrupulous.

144. Defendant's practices are also contrary to legislatively declared public policies that seek to protect PII/PHI and ensure that entities who solicit or are entrusted with personal data utilize appropriate security measures, as reflected by laws such as the CCPA, Article I, Section 1 of the California Constitution, and the FTC Act (15 U.S.C. § 45).

145. The gravity of Defendant's wrongful conduct outweighs any alleged benefits attributable to such conduct. There were reasonably available alternatives to further Defendant's legitimate business interests other than engaging in the above-described wrongful conduct.

146. Plaintiff and Class members suffered injury in fact and lost money or property as a result of Defendant's violations of its Privacy Policy and statutory and common law in that a portion of the money Plaintiff and Class members paid for Defendant's services went to fulfill the contractual obligations set forth in its Privacy Policy, including maintaining the security of their PII/PHI, and Defendant's legal obligations and Defendant failed to fulfill those obligations.

147. The UCL also prohibits any "fraudulent business act or practice." Defendant's above-described claims, nondisclosures and misleading statements were false, misleading and likely to deceive the consuming public in violation of the UCL.

148. As a direct and proximate result of Defendant's above-described

wrongful actions, inaction, omissions, and want of ordinary care that caused the Breach and its violations of the UCL, Plaintiff and Class members have suffered injury in fact and lost money or property as a result of Defendant's unfair and deceptive conduct. Such injury includes paying for a certain level of security for their PII/PHI but receiving a lower level, paying more for Defendant's products and services than they otherwise would have had they known Defendant was not providing the reasonable security represented in its Privacy Policy and as in conformance with its legal obligations.

149. Defendant's security practices have economic value in that reasonable security practices reduce the risk of theft of PII/PHI collected, maintained, and stored by Defendant.

150. Plaintiff and Class members have also suffered (and will continue to suffer) economic damages and other injury and actual harm in the form of, *inter alia*, (i) an imminent, immediate and the continuing increased risk of identity theft and identity fraud – risks justifying expenditures for protective and remedial services for which they are entitled to compensation, (ii) invasion of privacy, (iii) breach of the confidentiality of their PII/PHI, (iv) statutory damages under the CCPA, (v) deprivation of the value of their PII/PHI for which there is a well-established national and international market, and/or (vi) the financial and temporal cost of monitoring their credit, monitoring financial accounts, and mitigating damages.

151. Unless restrained and enjoined, Defendant will continue to engage in the above-described wrongful conduct and more data breaches will occur.

152. Plaintiff, therefore, on behalf of themselves, Class members, and the general public, also seek restitution and an injunction, including public injunctive relief prohibiting Defendant from continuing such wrongful conduct, and requiring Defendant to modify its corporate culture and design, adopt, implement, control, direct, oversee, manage, monitor and audit appropriate data security processes, controls, policies, procedures protocols, and software and hardware systems to

safeguard and protect the PII/PHI entrusted to it, as well as all other relief the Court deems appropriate, consistent with Cal. Bus. & Prof. Code § 17203.

## THIRD CAUSE OF ACTION

### Negligence

153.   Plaintiff and the Class incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

154.   Defendant owed various duties to Plaintiff and the Class, including those pursuant to the CMIA, as alleged in detail above.

155.   Specifically, Defendant owed a duty to Plaintiff and the Class with regard to its manner of collection and maintenance of Plaintiff and the Class members' personal data, including PHI, PII, and medical information.

156.   Defendant breached its duty by engaging in the conduct and omissions alleged above and in violation of the CMIA.

157.   Plaintiff believes and thereon alleges that as a proximate result of Defendant's negligence, Plaintiff and the Class have suffered actual damages and significant emotional distress as described herein and above.

158.   Due to the egregious violations alleged herein, Plaintiff asserts that Defendant breached Defendant's duty in an oppressive, malicious, despicable, gross and wantonly negligent manner. Defendant's conscious disregard for Plaintiff's privacy rights entitles Plaintiff and the Class to recover punitive damages.

## FOURTH CAUSE OF ACTION

### Breach of Implied Contract

159.   Plaintiff and the Class incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

160.   In obtaining services from Defendant, Plaintiff and the Class provided and entrusted their personal information, including PII and PHI, to Defendant.

161.   Defendant required Plaintiff and the Class to provide and entrust their PII and PHI as a condition of obtaining services from Defendant.

162.   As a condition of obtaining services from Defendant, Plaintiff and the Class provided and entrusted their PII and PHI. In so doing, Plaintiff and the Class entered into implied contract with Defendant by which Defendant agreed to safeguard and protect such PII and PHI, to keep such PII and PHI secure and confidential, and to timely and accurately notify Plaintiff and the Class if their PII and PHI had been compromised or stolen.

163.   Plaintiff and the Class fully performed their obligations under the implied contracts with Defendant.

164.   Defendant breached the implied contracts it made with Plaintiff and the Class by failing to implement appropriate technical and organizational security measures designed to protect their PII and PHI against accidental or unlawful unauthorized disclosure or unauthorized access and otherwise failing to safeguard and protect their PII and PHI and by failing to provide timely and accurate notice to them that their PII and PHI was compromised as a result of the Data Breach.

165.   As a direct and proximate result of Defendant's above-described breach of implied contract, Plaintiff and the Class have suffered (and will continue to suffer) the threat of the sharing and detrimental use of their confidential information; ongoing, imminent, and impending threat of identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm; actual identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm; loss of the confidentiality of the stolen confidential data; the illegal sale of the compromised data on the dark web; expenses and/or time spent on credit monitoring and identity theft insurance; time spent scrutinizing bank statements, credit card statements, and credit reports; expenses and/or time spent initiating fraud alerts, decreased credit scores and ratings; lost work time; and other economic and non-economic harm.

166.   As a direct and proximate result of Defendant's above-described breach of implied contract, Plaintiff and the Class are entitled to recover actual, consequential, and nominal damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests the Court grant Plaintiff and the Class members the following relief against Defendant:

- That the Court issue an Order certifying this action be certified as a class action on behalf of the Class, appointing the named Plaintiff as a representative of the Class, and appointing Plaintiff's attorneys, as Class Counsel;

- For equitable relief enjoining Defendant from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of the PII and PHI of Plaintiff and Class Members, and from refusing to issue prompt, complete, any accurate disclosures to Plaintiff and Class Members;

- For injunctive relief requested by Plaintiff, including but not limited to, injunctive and other equitable relief as is necessary to protect the interests of Plaintiff and Class Members;

- For an award of nominal damages in the amount of one thousand dollar ($1,000) per violation to Plaintiff individually and to each member of the Class pursuant to Civil Code § 56.36(b)(1);

- For an award of actual damages according to proof per violation pursuant to Civil Code § 56.36(b)(2);

- For an award of damages, including actual, consequential, nominal, and statutory damages, as allowed by law in an amount to be determined;

- For an award of attorneys' fees as authorized by statute including, but not limited to, the provisions of California Code of Civil Procedure § 1021.5, and as authorized under the "common fund" doctrine, and as authorized by the "substantial benefit" doctrine;

- For an award of costs of the suit;

- For prejudgment and post-judgment interest as allowed at the legal rate; and

- Any other further relief as this Court deems necessary, just, and proper.

## __DEMAND FOR JURY TRIAL__

Plaintiff, individually and on behalf of the putative Class, demands a jury trial.

Dated: June 17, 2024                    Respectfully submitted,

**KAZEROUNI LAW GROUP, APC**

By:  _/s/ Abbas Kazerounian_
Abbas Kazerounian, Esq.
Mona Amini, Esq.
245 Fischer Avenue, Unit D1
Costa Mesa, California 92626
Telephone: (800) 400-6808
Facsimile:  (800) 520-5523
ak@kazlg.com
mona@kazlg.com

*Attorneys for Plaintiff*

CLASS ACTION COMPLAINT